Good morning, your honors. My name is Chris Kirkring, and I represent the petitioner Ron Martin. To begin, we would like to submit claims 3 and 4 on the briefs with regard to claims 1 and 2. Both the trial court and... Which were 3 and 4? 3 and 4 were the claims regarding ineffective assistance of counsel for failure to have an expert with regard to the evidentiary hearing and at trial. I thought those were the ones that the district court found were procedurally barred. The district court did find that they were procedurally barred. We contested that. And I understand that you're not admitting, but you'll just rest on your brief for the argument? Yes. Okay. All right. With regard to claims 1 and 2, both the trial court and defense counsel should have known that Mr. Martin's mental illness raised a bona fide doubt with regard to his competency. This was true from the first day he entered court to the day... Can we break this into two parts? Sure. What did the court know? And as a trial judge, I'm always sensitive to this thing, and I'll order, but I have to have a reasonable basis to believe that he may not be competent. So what did the trial judge know that the trial judge sui sponte should award the competency exam? From the first day, the first day that Mr. Martin appeared in court, defense counsel said he had a concern about his client's competency. But that wasn't the trial judge, right? That was Editor Raymond. It's comprehensive. This is when we talk about the trial court, we don't talk about an individual judge. We talk about the court in general. But how could the trial judge be aware of things that are not brought to his attention? It is the trial. It is the court itself, not necessarily the trial judge, that has this obligation. Okay. Well, even assuming you have that statement by, is it Mr. Hennigan? Hennigan, Mr. Hennigan. Hennigan, right. That statement was also echoed by the prosecuting attorney at that same hearing. Rather than acknowledging that and ordering a competency hearing, the trial court said, well, you can bring that up any time. Knowing that both counsel had this concern, there is no reason why that should not have been recognized. Well, but what was, if a lawyer says to me, I think, you know, my client may have some competency problems, I don't think that's enough for me to order an exam and send them off to Springfield or whatever. I need some factual basis to make the conclusion. So what factual basis did the judge have? The judge knew about Mr. Martin's psychiatric treatment and prior hospitalizations. He knew about visual and auditory hallucinations and that Mr. Martin was delusional. He knew that Mr. Martin claimed that a voice would hit him if he were to identify the murder weapon. Counsel, that all goes to perhaps to evidence of mental illness. The question, and I know this has been an issue that the state courts have pointed out, that some of the arguments that have been made by other lawyers before you have sort of conflated the concepts of mental illness with competency to stand trial. So it seems to me the issue that we're wrestling with here is what red flag should have been waved before the Superior Court judge that would have caused the trial court judge to question the defendant's competency to stand trial? One issue with regard to the question of mental illness and competency, I believe is a confusion about what is required here. And it's not that the trial court was required to find that he was not competent. It's that he would have a bona fide doubt as to competency. And the red flags, again, begin with the first day. Then once the trial court knows about the prior psychiatric treatment and prior psychiatric hospitalization, once the trial court knows about these auditory and visual hallucinations, once the trial court knows that Mr. Martin said a voice in his head had killed Brian Johnson, and once the trial court knows that he claims that Brian Johnson would hit him if he were to identify the murder weapon, once the trial court knows that Mr. Hennigan raised a Fifth Amendment claim saying that his client was not competent to waive his rights during the interrogation, once the trial court knows that there was a prior mental health defense, once the trial court knows that in custody Mr. Martin was having psychiatric trouble, that he had convulsions and seizures, and that he had unexplained head injuries. These are all clear red flags that were not recognized. And more precisely then, where did the State Court of Appeals go wrong? The State Court of Appeals went wrong in several respects. The first is that they applied the wrong standard of review. The State Court of Appeals applied an abuse of discretion standard. That is both against what Pate and Dusky require, which is a comprehensive review, and on its face, it frankly doesn't make sense. If you have a question about competency, the trial court is required to order a hearing. They don't have discretion at that point. So the question really is whether all of this evidence taken together would have raised a bona fide doubt as to his competency. But I thought that the state courts did adjudicate that claim, which was essentially that there was insufficient reason to raise a bona fide doubt. Don't we have those findings in the state court record? That was not adjudicated at a reference hearing. Well, I'm not talking about a reference hearing, but we can look at the determination or the rulings by the State Court of Appeals and the State Supreme Court on direct appeal, can't we? Those rulings do not prevent this court from going back actually to the record on appeal, to the proceedings, and that's because, again... But this is still Edco review, isn't it? We accept to the extent there are factual determinations inherent in their opinions, those facts are presumed to be correct unless you can convince us by clear and convincing evidence that they were wrong. Under 2254d.1, if we show that they applied the wrong Supreme Court standard or they misapplied the law, then this court can then review the claim de novo. And when they applied the abuse of discretion standard, that was a misapplication clearly stated. But what they're saying here is they go through almost the same facts you do, which seem undisputed. They say, you know, there's no suggestion this medication doesn't work, but he's hearing voices, he definitely has mental illness, talked about what the psychiatrist said. So based on that whole record, they basically say none of those facts considered singly or together give reason to conclude that Miller lacked the capacity to understand the nature of the proceedings or to assist in the defense. With all due respect to the appellate court, they were wrong. And this court has the opportunity to take a fresh look at these facts and determine the right and appropriate decision. Well, I think that goes back to Judge McEwen's question before. The standard is whether they unreasonably applied relevant Supreme Court precedent or unreasonably determined the facts, right? And, again, the abuse of discretion standard they used is an error. And, again, once you look at these facts, then we contend that it is a clear unreasonable act. What do you contend the standard for them? I'm sorry?  So hate and drope say that it's a comprehensive review, and I think it's sufficient to say that that's deniable. And where do they tie it to the abuse of discretion? They tie it to the abuse of discretion when they're initially making their analysis,  With regard, unless there are other questions. Well, I'm just trying to assess this in light of AEDPA, because I understood that statement to mean that since you are making a sua sponte argument, it is within the authority, I guess discretionary authority, if you will, of the court to decide whether or not a competency examination is needed. But before that power can be exercised, there has to be a bona fide doubt as to competency. And they clearly made a finding that there is no, that on the facts that you're hanging on, that wasn't enough. Oh, my apologies. Yeah, no, I'm just trying to tease this out as to, so what does that mean? If there is, I guess I would call that a prima facie showing of the raising of a bona fide doubt. And your argument, I guess, under hate and drope is that a hearing must, a competency evaluation must be ordered, but it must be ordered only if there are facts sufficient to raise a bona fide doubt, right? The, what I believe the state court is saying is that with regard to all of the evidence, that in consideration of that evidence, it was not an abuse of discretion. And that is the error that we believe the state court made. I mean, I think what the state is, what the court was saying is actually looking at all these facts, we don't think there's any reason to have a doubt. I just don't see it tied to the abuse of discretion even as they explain it. To the extent that that's true, that's where this becomes an unreasonable application of the facts to this case. Given every single red flag, the state court says there were no red flags. That just simply is not the case. This was abundant information. And as set on direct appeal, the court then said there was ample evidence of his mental illness. This was, I think without question, accumulative examples of red flags that should have raised a bona fide doubt. The second one is the attorney. The second one is the attorney. And I, Now on the attorney claim, the difference between the first claim and the second claim, you don't have to prove prejudice on the first claim, right? Absolutely. On the second claim, you have to prove prejudice. Yes. And so where, is there anything, you had that doctor who saw him when he was committed to custody, et cetera. Is there anybody who said, and they saw him for nine months before I think his arrest on this, is there any evidence in the record that someone determined that he was not competent? There is. No one was asked whether he was competent, and that was not a requirement in order to determine whether there was a reasonable probability that he would be competent, that he would be found incompetent to stand trial. I think that when you look at this, one of the most compelling problems is the fact that the Kitsap County Jail records were not disclosed. That even though counsel at the reference hearing submitted a subpoena to the judge that required the Department of Corrections to turn over all of their records, the Department of Corrections did not do that. They withheld all of the Kitsap County Jail records. How do we get over the finding of lack of due diligence by his lawyers in pursuing discovery on that issue? The lack of due diligence question I think is clear for several reasons. One, it is I think a real problem for this court to say that a judge's order can be ignored and then the defense counsel can be blamed for that. That is the situation we have here. But there are remedies for that. Counsel could file a motion for an order to show cause to hold the Department of Corrections in contempt. That wasn't done. But I'm not sure your answer is responsive to my question. This is a factual finding that the lawyers were not diligent. That's a factual finding from the district court, and this court has de novo review. I thought that there was also a factual finding by one of the Washington court appeals. No, this was raised. Was that just in Judge Strombaum's order? Yes, yes. And when we look at this again, there's a legal problem, that the Department of Corrections had a legal obligation to turn all of this over. There is a practical problem, which is they did not do a privileged log. There was no way for the attorney at the reference hearing to know that they had these because it was never identified. But I thought the problem was the attorney never asked the jail directly for the jail record. It never asked the Kitsap County Jail for them. Right. But it asked for all the records the Department of Corrections had. But I thought the magistrate, at this point, was all they had to do was serve a discovery request on the Kitsap County Jail. But the counsel at the hearing had asked for all the records from the DOC. He had the right to rely on them, that they would provide those. They did not provide them. Maybe we're talking at cross purposes, but there was nothing that prevented counsel from simultaneously serving requests, both on the Department of Corrections and on the jail, right? You're correct. But that is to require counsel at a reference hearing to essentially request from everyone when it can rely on its own subpoena to a specific agency that has the records and they fail to turn them over. That should not be considered a lack of diligence. He did the most comprehensive request he could do to the Department of Corrections. To one agency. I mean, it's not uncommon in our experience to find that another agency doesn't have all the records that the jail might have. When you look at what the agency withheld, that is information that would have prompted further discovery, further requests. But was that information in the Kitsap County Jail records? It was. So had counsel inquired, it would have been disclosed from the jail? Had counsel inquired, you're right. But what we have here is a reliance on a subpoena from a judge that he was entitled to rely on. He did not get the documents that he was entitled to. I think I understand that argument. Thank you. Unless the Court has further questions. Thank you. May it please the Court. My name is Greg Rosen. I'm an Assistant Attorney General, and I represent the respondent in this matter. The Supreme Court was clear and unequivocal in Harrington v. Richter. It stated that Section 2254D preserves authority to issue the writ in cases where there is no possibility. Fair-minded jurists could disagree that the State Court's decision conflicts with Supreme Court precedent. Martin fails to show that the State Court decisions in this case meet that standard. Consequently, I would respectfully request that this Court affirm the decision of the District Court. Opposing counsel opined a few moments ago that the Washington Court of Appeals' decision as to the first two claims was wrong. But the Supreme Court has been unequivocally clear repeatedly in Williams v. Taylor and in Harrington that being wrong is not good enough for AEDPA relief. Instead, what must be shown is that the State Court decisions were objectively unreasonable. And I just recited the standard set out in Harrington as to what the petitioner must meet to show AEDPA relief. And Martin simply fails to meet that standard. As to Martin's first claim, the State Court reasonably determined that Martin, as Judge McKeown indicated earlier, presented evidence of mental illness. There is no dispute that Martin is a mentally ill man. But that evidence, considered singly or together, did not give reason to conclude that Martin lacked the capacity to understand the nature of the proceedings and to assist his counsel in his defense. And Martin is conflating mental illness with mental incompetency, the ability to understand the nature of the proceedings and to assist counsel. Mr. Hennigan testified at length in the Superior Court reference hearing when it was remanded by the Court of Appeals as to Martin's ineffective assistance claim, as to whether counsel was ineffective for allegedly not requesting a competency evaluation. And I would respectfully urge the Court to review Mr. Hennigan's testimony at the reference hearing. That can be found at ER 518 to 583. Mr. Hennigan made clear that he was well aware, well aware of Mr. Martin's mental health history, was well aware of his mental illness, but saw no reason to question his competence at any point along the line. Consequently, Mr. Hennigan and the State Court reasonably determined that Mr. Hennigan had no basis to question Mr. Martin's competence as to the many hearings that Mr. Hennigan participated with with Mr. Martin throughout the State Court proceedings. The State Court made a- This doesn't really go to claim one, though. That would go to the ineffective assistance at counsel claim. But claim one, is there enough in the record that the trial judge should have ordered a competency hearing? That's correct. It goes to claim two. That's true, Your Honor. But the issue as to whether Hennigan had reason to question Martin's competence during trial preparation, that does go to claim one, because this Court has held in Hernandez v. Yilst that defense counsel is in the best position to determine whether his client understands the nature of the proceedings. And this Court also held in U.S. v. Clark, which also goes to claim one, Your Honor, that the fact that counsel considers his client, his defense, the defendant to be competent, is substantial evidence of competence. And this Court cited both Hernandez and U.S. v. Clark in its decision earlier this year in Stanley v. Cohen, in which this Court denied habeas relief as to the same claim in claim one here as there. There, this Court denied habeas relief as to the claim that the trial court erred by failing to set a competency hearing. And in that particular case, the evidence that this Court discussed was that as to the defendant or the petitioner in Stanley v. Cohen, that counsel indicated that Stanley, as to outside-the-courtroom behavior, indicated that the petitioner was difficult to control, that he suffered from anxiety, and that counsel characterized his behavior as exhibiting schizophrenic-like behavior. Mr. Martin didn't exhibit any of that before the trial court. And Drope set out certain criteria as to what would qualify for a bona fide doubt as to competency. And Drope discussed criteria such as irrational behavior and demeanor before the trial court. And just as I'm respectfully urging the Court to review Mr. Hennigan's testimony at the reference hearing, I would similarly respectfully urge the Court to review Mr. Martin's trial testimony, which can be found at SCR 744-843. The Court will conclude, I respectfully suggest, that after it reviews that testimony, the Court will find that Mr. Martin was fully competent at the time that his trial occurred. I'd like to speak to the third claim briefly. I understand counsel has indicated that he is submitting Claims 3 and 4 on the briefs. I would like to just say a few words, if I might, regarding Claim 3. I respectfully submit that Claim 3, Mr. Martin is not entitled to federal habeas relief. Regarding that claim, Colorado v. Connolly makes abundantly clear that absent coercive police misconduct, there's no basis for concluding that a confession was involuntary in violation of the 14th Amendment. But here's really what he's really contending here is that the waiver wasn't knowing, voluntary, and intelligent. That's right. But as Colorado v. Connolly indicated by the Supreme Court, Your Honor, the element that must be shown for a confession not to be found to be involuntary is coercive police misconduct. But what if someone doesn't understand? They just don't have the ability, cognitive ability, to understand the Miranda warnings? And there's no coercion there, but still you'd find that the Court would find that there's no waiver. That's true. And this Court found that as to, in the case of one of my colleagues, because he had issues and he didn't speak English very well. That's true, Your Honor. However, Colorado talks about Miranda, which is based, obviously, on the Fifth Amendment, which is based on governmental coercion. Unless I'm misreading Colorado. Well, but doesn't that go to the voluntariness of the confession or the voluntariness component of the Miranda waiver? There's still the knowing aspect. There is the knowing aspect as to whether Mr. Martin's mental illness would prevent him from knowingly. I mean, you would agree that if the person speaks Spanish and they gave him the Miranda warnings in English, even if there was no coercion, they were totally warm and fuzzy with him, that that still wouldn't qualify as a Miranda waiver, right? Yes, I would agree with that. So now substitute the language barrier for a mental barrier. That's true. But as Judge Tolman indicated earlier, we're here based upon an AEDPA review. Right. So in order for Mr. Martin to achieve habeas relief as to his third claim, he's going to have to show that the state court decision was an unreasonable application of Supreme Court precedent. What I'm indicating, Your Honor, is that based on Colorado v. Connolly, he can't do that. He can't show that there is a Supreme Court case that says, if I had presented testimony from a mental health expert and he opined during his testimony that I could not knowingly and voluntarily waive my Miranda rights, I'm entitled to suppression of my statement to the police. Colorado says the opposite. It stresses that you've got to have coercive police misconduct to have lack of voluntariness. And I understand your question, Judge Poskowitz, as to the language, the analogy to the language barrier. But we're here on AEDPA, and AEDPA requires that Mr. Martin show that the state court decision was objectively unreasonable based upon Supreme Court precedent. There is no Supreme Court precedent which stands for the proposition he offers. That is why he's not entitled to habeas relief on his third claim. That's on the merits, but I thought your position was that that claim was procedurally barred because it wasn't exhausted before. No, Your Honor, I don't believe it. Did I mix up the claim? Yes, Your Honor, respectfully. It's okay. It's a complicated case. Four claims under the failure to investigate an IAC. No, no, I just want to make sure I understand which claims are barred and which are not. You're saying part of two is barred. Correct. But for the purposes of this proceeding, I'm willing to concede that Mr. Martin exhausted the entirety of claim two, but urge the court that the state court decision was not objectively unreasonable. I'm lost. Are you still contending no exhaustion of procedural bar for part of claim two? Yes, but I'm trying to... Simplify. Simplify things for the court. So what if we were to find that it was objectively unreasonable? Then we don't have to deal with the procedural default issue? Well, I think the court would have to first reach the procedural default issue before you could make a determination that it was potentially objectively unreasonable. I see what you're saying. You're just not arguing. You're saying, look, they lose on the merits, so don't worry about the procedural issue. Yes. I think, if I'm recalling the statute correctly, 2254B2 permits the court to find that there's no entitlement to relief, notwithstanding the failure to exhaust. We can't do the flip of that. Exactly. Okay. Got it. We would respectfully urge this court to affirm the decision of the district court. Thank you. Thank you. I think you're in the hole, but we're going to give you a minute, so you'll have an opportunity to reply. Two things quickly. With regard to the exhaustion, we argued that it was not exhausted in our opening brief. The state did not make an argument in its response with regard to that, and I believe that that was a decision that recognized that that portion of Claim 2 was exhausted. Now, briefly, as far as the- Let me ask you about that. You're saying that it was exhausted. It was exhausted, yes. But doesn't it have to be an affirmative waiver of exhaustion by the state under the case law? I would submit that their failure to argue it is a recognition that it was exhausted, a waiver notwithstanding. Now, with regard to Mr. Martin's testimony, there were 396 one-word answers in that testimony. It is almost primarily yeah, no, yeah, no. There is no basis to determine that that testimony in itself would suggest competency. That's particularly true because when you look at the jail records from Kitsap County, they state that he had a flat affect, that he stuttered, that he was slow in speech. These are all things that cannot be captured on the record. But that given his one-word answers, given these statements about what we know about his speech, I don't think that his testimony should suggest anything about his competency. Thank you. Thank you. The case of Martin v. Quinn is submitted.
judges: Moskowitz, McKeown, Tallman